No. 23-2181

# In the United States Court of Appeals for the Third Circuit

———————————————

MICHAEL RITZ, *et al.*,

*Plaintiffs-Appellants*,

v.

NISSAN-INFINITI LT,

*Defendant-Appellee.*

———————————————

On Appeal from the
United States District Court for the District of New Jersey
Hon. Georgette Castner
Case No. 3:20-cv-13509

———————————————

## BRIEF OF *AMICI CURIAE* CONSUMER FINANCIAL PROTECTION BUREAU AND FEDERAL TRADE COMMISSION IN SUPPORT OF APPELLANTS

———————————————

Anisha Dasgupta
    *General Counsel*
Mariel Goetz
    Acting *Deputy General Counsel*
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
(202) 326-2763 (telephone)
mgoetz@ftc.gov

Seth Frotman
    *General Counsel*
Steven Y. Bressler
    *Deputy General Counsel*
Kristin Bateman
    *Assistant General Counsel*
Justin M. Sandberg
    *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786 (telephone)
Justin.Sandberg@cfpb.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

QUESTION PRESENTED ................................................................. 1

STATEMENT OF RELATED CASES ............................................... 1

INTEREST OF AMICI CURIAE ...................................................... 1

STATEMENT ..................................................................................... 4

    A.  The Fair Credit Reporting Act ...................................... 4

    B.  Facts and Procedural History ........................................ 7

SUMMARY OF ARGUMENT ........................................................ 11

ARGUMENT ................................................................................... 13

The FCRA Requirement for Furnishers to Reasonably Investigate Disputes Applies to Disputes that Implicate Legal Issues, Not Just Disputes Raising Purely Factual Questions ................................................................. 13

   A.  The FCRA Applies Equally to Disputes that Could Be Characterized as Legal ........................................................................ 13

   B.  The Fact That Some Purportedly "Legal" Disputes Have Colorable Arguments on Both Sides Does Not Excuse Furnishers from Considering Them ............................................................................... 17

   C.  An Atextual Exception for "Legal" Disputes Could Swallow the Reasonable Investigation Rule ............................................... 25

CONCLUSION ................................................................................ 30

COMBINED CERTIFICATIONS ................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alston v. Wells Fargo Bank, N.A.,*
2013 WL 990416 (D. Md. Mar. 12, 2013) ................................................. 23

*Am. Eagle Outfitters v. Lyle & Scott Ltd.,*
584 F.3d 575 (3d Cir. 2009)...................................................................... 26

*Chiang v. Verizon New Eng. Inc.,*
595 F.3d 26 (1st Cir. 2010)................................................................10, 19

*Chuluunbat v. Experian Info. Sols., Inc.,*
4 F.4th 562 (7th Cir. 2021)....................................................................... 27

*Cornock v. Trans Union LLC,*
638 F. Supp. 2d 158 (D.N.H. 2009).......................................................... 25

*Denan v. Trans Union LLC,*
959 F.3d 290 (7th Cir. 2020) ....................................................................20

*Dennis v. BEH-1, LLC,*
520 F.3d 1066 (9th Cir. 2008) ................................................................. 29

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d 1147 (9th Cir. 2009) ..............................................................5, 13

*Gross v. CitiMortgage, Inc.,*
33 F.4th 1246 (9th Cir. 2022) ........................................................ *passim*

*Hinkle v. Midland Credit Mgmt., Inc.,*
827 F.3d 1295 (11th Cir. 2016) .......................................................... 22, 23

*Hopkins v. I.C. Sys.,*
2020 WL 2557134 (E.D. Pa. May 5, 2020) ............................................... 29

*John F. Harkins Co., Inc. v. Waldinger Corp.,*
796 F.2d 657 (3d Cir. 1986)...................................................................... 26

*Johnson v. MBNA Am. Bank, N.A.,*
357 F.3d 426 (4th Cir. 2004) ................................................................... 23

ii

*Losch v. Nationstar Mortg.*, LLC,
   995 F.3d 937 (11th Cir. 2021) ...................................................... 29

*Mader v. Experian Info. Sols., Inc.*,
   56 F.4th 264 (2d Cir. 2023) .............................................. 18, 29

*Nelson v. Ocwen Loan Servicing, LLC*,
   2014 WL 2866841 (D. Or. June 23, 2014) ................................ 29

*Ritz v. Nissan-Infiniti LT*,
   2023 WL 3727892 (D.N.J. May 30, 2023) ...................... *passim*

*Saranchak v. Sec'y, Pa. Dep't of Corr.*,
   802 F.3d 579 (3d Cir. 2015) ........................................................ 15

*Scarbo v. Wisdom Fin.*,
   2022 WL 16829371 (3d Cir. Nov. 9, 2022) ................................ 13

*Seamans v. Temple Univ.*,
   744 F.3d 853 (3d Cir. 2014) ...................................................... 22

*Sessa v. Linear Motors, LLC*,
   576 F. Supp. 3d 1 (S.D.N.Y. 2021) ...................................... 27, 28

*Sessa v. Trans Union, LLC*,
   74 F.4th 38 (2d Cir. 2023) .......................................... 18, 27, 28

*Unicolors, Inc. v. H&M Hennes & Mauritz, LP*,
   595 U.S. 178 (2022) ..................................................................... 15

*Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*,
   894 F.3d 509 (3d Cir. 2018) ...................................................... 26

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*,
   935 F.3d 187 (3d Cir. 2019) ........................................................ 17

## Statutes

15 U.S.C. § 45(a) ............................................................................. 2

15 U.S.C. § 1681 ................................................................................ 1

15 U.S.C. § 1681a(d) ........................................................................ 4

15 U.S.C. § 1681i(a)(1)(A) ................................................................5, 14

15 U.S.C. § 1681i(a)(2) ...................................................................5, 14

15 U.S.C. § 1681i(a)(5)(A) ................................................................. 5

15 U.S.C. § 1681i(a)(6) ....................................................................... 6

15 U.S.C. § 1681i(b) ............................................................................ 6

15 U.S.C. § 1681i(c) ............................................................................ 6

15 U.S.C. § 1681n ............................................................................... 6

15 U.S.C. § 1681o ............................................................................... 6

15 U.S.C. § 1681s(a) ........................................................................... 2

15 U.S.C. § 1681s(b) ........................................................................... 2

15 U.S.C. § 1681s(c) ........................................................................... 2

15 U.S.C. § 1681s(e) ........................................................................... 2

15 U.S.C. § 1681s-2(a)(8) ................................................................ 3, 5

15 U.S.C. § 1681s-2(b) .................................................................... 5, 6

15 U.S.C. § 1681s-2(b)(1) ............................................................. 14, 19

15 U.S.C. § 1681s-2(b)(1)(A) ..........................................................2, 13

15 U.S.C. § 1681s-2(b)(1)(B) .............................................................. 6

15 U.S.C. § 1681s-2(b)(1)(C) .............................................................. 6

15 U.S.C. § 1681s-2(b)(1)(D) .............................................................. 6

15 U.S.C. § 1681s-2(b)(1)(E) .......................................................... 6, 24

15 U.S.C. § 1681s-2(c)(1) .................................................................... 3

## Regulations

12 C.F.R. § 1022.43(a) ....................................................................21

12 C.F.R. § 1022.43(a)(1) ..............................................................21

## Other Authorities

*Accuracy*, Merriam-Webster.com Dictionary, Merriam-Webster,
  https://www.merriam-webster.com/dictionary/accuracy (last visited
  Feb. 6, 2024) ...........................................................................15

Appellee's Answer Br., *Holden v. Holiday Inn Club Vacations, Inc.*,
  No. 22-11014 (11th Cir. Feb. 8, 2023) .......................................15

Appellee's Answering Br., *Gross v. CitiMortgage, Inc.*,
  No. 20-17160, 2021 WL 2672784 (9th Cir. June 25, 2021)......................14

*Complete*, Merriam-Webster.com Dictionary, Merriam-Webster,
  https://www.merriam-webster.com/dictionary/complete (last visited
  Feb. 6, 2024) ...........................................................................16

Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer
  Reporting Complaints (Jan. 2023),
  https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-
  e_report_2023-01.pdf ............................................................... 7

Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S.
  Credit Reporting System (Dec. 2012),
  https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-
  white-paper.pdf ....................................................................... 4

*Investigate*, Merriam-Webster.com Dictionary, Merriam-Webster,
  https://www.merriam-webster.com/dictionary/investigate (last visited
  Feb. 6, 2024) ...........................................................................16

S. Rep. No. 91-517 (1969) ............................................................. 4

## QUESTION PRESENTED

Is there an atextual exception to the Fair Credit Reporting Act, (FCRA), 15 U.S.C. § 1681 *et seq.*, that allows entities like the Nissan Motor Acceptance Corporation (Nissan or NMAC) that furnish credit information to consumer reporting agencies (CRAs) to refuse to investigate credit disputes when the alleged inaccuracy is purportedly legal in nature, rather than factual?

## STATEMENT OF RELATED CASES

Several cases pending before the Eleventh Circuit present the same legal issue—*Holden/Mayer v. Holiday Inn Club Vacations (HICV)*, Nos. 22-11014, 22-11734 (11th Cir.), and *Belair v. HICV*, Nos. 23-10101 (11th Cir.)—as does a case pending in the Fourth Circuit, *Roberts v. Carter-Young, Inc.*, No. 23-1911 (4th Cir.). The *Holden/Mayer* cases were argued on October 3, 2023; and the *Belair* and *Roberts* cases have been fully briefed, but not set for argument.

## INTEREST OF AMICI CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 *et seq.*, requires CRAs and entities that furnish information to CRAs (furnishers) to follow various requirements when they compile and disseminate personal information

1

about individuals. The Consumer Financial Protection Bureau (CFPB or Bureau) has exclusive rule-writing authority for most provisions of the FCRA. *Id.* § 1681s(e). The Bureau thus interprets and, along with various other federal and state regulators, enforces the Act's requirements. *Id.* § 1681s(a)–(c).

The Federal Trade Commission (FTC or Commission) has been charged by Congress with protecting consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA. The Commission enforces the FCRA through Section 5 of the FTC Act. Congress deemed a violation of the FCRA to "constitute an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the [FTC Act]." *Id.* § 1681s(a). And the FCRA grants the Commission "such procedural, investigative, and enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.*

When a CRA notifies a furnisher of an individual's dispute about information it furnished to the CRA, the FCRA requires the furnisher to "conduct an investigation with respect to the disputed information." *Id.* § 1681s-2(b)(1)(A). This case presents a question about the scope of a

2

furnisher's duty to investigate this sort of "indirect dispute"—i.e., a dispute filed by a consumer with a CRA, which the CRA then forwards to the furnisher.[1]

The district court held that furnishers need not investigate indirect disputes involving purportedly "legal" questions. This decision has no basis in the text of the FCRA, unduly narrows the scope of a furnisher's obligations, and runs counter to the purpose of the FCRA to require a reasonable investigation of consumer disputes. If it stands, the decision would limit consumers' ability to ensure that potentially harmful inaccuracies on their consumer reports are corrected. Given their role in administering and enforcing the FCRA, the Bureau and the Commission have a substantial interest in correcting the decision below and clarifying the governing legal standards.

---

[1] In contrast, a "direct dispute," addressed by a different provision of the FCRA, 15 U.S.C. § 1681s-2(a)(8), is a dispute that the consumer submits to the relevant furnisher. The FCRA does not provide a private right of action to consumers for violations of furnishers' obligation to investigate direct disputes. *Id*. § 1681s-2(c)(1).

## STATEMENT

### A. The Fair Credit Reporting Act

1. Information contained in consumer reports has critical effects on Americans' daily lives.[2] Consumer reports are used to evaluate consumers' eligibility for loans and determine the interest rates they pay, ascertain their eligibility for insurance and set the premiums they pay, and assess their eligibility for rental housing and checking accounts. Prospective employers commonly use consumer reports in their hiring decisions. *See generally* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (Dec. 2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

Given the importance of this information, Congress enacted the FCRA to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

2. Since its enactment in 1970, the FCRA has governed the practices of CRAs that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers,

---

[2] The FCRA generally uses the term "consumer report," *see, e.g.*, 15 U.S.C. § 1681a(d) (defining "consumer report"), rather than the more common term "credit report." This brief uses the two terms interchangeably.

landlords, and other entities. To further ensure that consumer reports are accurate, in 1996 Congress amended the FCRA to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). These duties include a requirement that furnishers investigate when consumers dispute information that a furnisher has given to a CRA. Under the Act, furnishers have an obligation to investigate potential inaccuracies in two circumstances involving disputes: (i) when a consumer submits a dispute directly to a furnisher; and (ii) when a consumer submits an "indirect" dispute to a CRA, which must forward the dispute to the furnisher under § 1681i(a). 15 U.S.C. § 1681s-2(a)(8), (b).

When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item . . . contained in a consumer's file," the CRA must, among other things, provide notice to the furnisher, 15 U.S.C. § 1681i(a)(2), which must then conduct an investigation, *id*. § 1681s-2(b).[3] As part of investigating this "indirect" dispute, the furnisher must

---

[3] Within 30 days of receiving notice of the dispute, the CRA generally must record the status of the disputed information or modify or delete the disputed information, as appropriate, and promptly notify the furnisher that the information has been modified or deleted. 15 U.S.C. § 1681i(a)(1)(A), (a)(5)(A). After completing a reinvestigation, the CRA must notify the consumer of the results within five business days. *Id*.

"review all relevant information" that the CRA provides. *Id.* § 1681s-2(b)(1)(B). After the investigation, the furnisher must "report the results of the investigation" to the CRA. *Id.* § 1681s-2(b)(1)(C). In addition, "if the investigation finds that the information is incomplete or inaccurate," the furnisher must report that "to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis." *Id.* § 1681s-2(b)(1)(D). And if disputed information "is found to be inaccurate or incomplete or cannot be verified," the furnisher must also promptly modify, delete, or permanently block the reporting of that information "as appropriate, based on the result of the reinvestigation." *Id.* § 1681s-2(b)(1)(E). These responsibilities are part of the FCRA's overall framework for ensuring accuracy in credit reports.

A consumer may sue a furnisher for willful or negligent noncompliance with its obligation to respond to indirect disputes under § 1681s-2(b). *Id.* §§ 1681n, 1681*o*.

---

§ 1681i(a)(6). If the CRA reinvestigation does not resolve the dispute, the consumer has the right to add a brief statement about the dispute that will appear or be summarized in all subsequent consumer reports from the CRA that contain the information. *Id.* § 1681i(b)-(c).

3. Despite Congress's repeated efforts to promote accuracy, errors persist in consumer reports. Between October 2021 and September 2022, the Bureau received nearly 1,000,000 complaints about credit or consumer reporting, and the most common issue consumers identified was incorrect information on a credit report. *See* Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer Reporting Complaints (Jan. 2023)("Annual Report"), at 11, https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2023-01.pdf (consumerfinance.gov).

## B. Facts and Procedural History[4]

In this case, a father and son, Michael and Andrew Ritz, leased a Nissan Sentra. *See Ritz*, 2023 WL 3727892, at *1. Under the terms of their lease agreement with Nissan, they were obligated to return the car by August 9, 2019. *Id.* On that day, they brought the car to their local Nissan dealership. *Id.* at *2. A manager at the dealership refused to accept the car because the Ritzes had not made an appointment. *Id.* For the same reason, the dealer refused to give the Ritzes the odometer-reading verification form that they were required to sign as part of the vehicle-return process. *Id.* The

---

[4] The facts are drawn from the district court's opinion and documents cited there. *See Ritz v. Nissan-Infiniti LT*, No. 20-cv-13509-GC-DEA, 2023 WL 3727892 (D.N.J. May 30, 2023). The procedural background is drawn from the district court's docket and documents included in it.

Ritzes put the keys on the manager's desk and left. *Id.* They then contacted Nissan's complaint line to report what had happened. *Id.* Later, the Ritzes received a notice that they owed additional money because, Nissan asserted, they had not returned the car on time—and eventually the debt showed up as delinquent on their consumer reports. *Id.* at *2-3.

The Ritzes complained repeatedly to Nissan and the CRAs, but Nissan refused to remove the reported debt. *Id.* at *3. Nissan's position was that, under the terms of the lease agreement, the Ritzes had returned the car late because they had not made an appointment or signed the odometer verification form. *Id.* That's what the Credit Bureau Management team (Credit Bureau Team) at Nissan thought, anyway. *Id.* But another group at Nissan—the Complaints Management Department (Complaints Department)—took the Ritzes' side and repeatedly asked the Credit Bureau Team to remove the debt from the Ritzes' credit reports. *Id.* The Complaints Department determined that the debt should be removed because the dealer had, in fact, taken possession of the car on August 9. *Id.* The Credit Bureau Team refused the first two requests from the Complaints Department to remove the negative information. *Id.* The Credit Bureau Team based its refusal on a typographical error regarding the car's vehicle identification number in internal documents. *Id.*

8

Eventually, Nissan received notice that the Ritzes had complained to the CFPB. *Id.* Again, the Complaints Department asked the Credit Bureau Team to remove the information. *Id.* The Credit Bureau Team expressed its intent to reject the request again, but a manager from the Complaints Department overrode the Credit Bureau Team's determination. *See id.*; Plaintiffs' Responsive Statement of Facts, ECF No. 67-1, ¶ 34.Nissan then sent a letter to the CFPB explaining the following: (i) "the vehicle was returned on August 9, 2019," (ii) the dealership employees "were late in grounding the vehicle,"[5] and (iii) Nissan had submitted a request to the CRAs to remove the derogatory information from the Ritzes' consumer reports. *See Ritz*, 2023 WL 3727892, at *3.

The Ritzes sued Nissan and the CRAs, alleging violations of the FCRA, including that Nissan failed to conduct reasonable investigations of disputes referred to it by a CRA. *See* Compl., ECF No. 1, ¶ 49. The Ritzes voluntarily dismissed the CRAs. Following discovery, Nissan moved for summary judgment. It argued, among other things, that its reporting was accurate and that, in any case, it did not have to investigate the alleged inaccuracy because it related to legal issues—i.e., whether the Ritzes had

---

[5] "Grounding" a vehicle appears to refer to the dealer taking possession of the vehicle, inspecting it, and completing paperwork related to its return. *See* Nissan Summ. J. Br., ECF No. 66-5, at 5-6.

9

satisfied the lease's requirements for returning the car. *See Ritz*, 2023 WL 3727892, at *5.

The district court entered summary judgment for Nissan. It concluded that a reasonable investigation claim under the FCRA must be predicated on factual inaccuracies, and that the Ritzes had objected only to Nissan's legal conclusions. *Id.* at *5-7. The court recognized that there is no Third Circuit case on point, but it sided with an approach taken by the First Circuit, under which a furnisher need only investigate factual disputes. *See id.* at *7 (citing Chiang *v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)). The district court took the First Circuit's facts-only approach to be the majority view. *See Ritz*, 2023 WL 3727892, at *7. As for the Ninth Circuit's opinion in *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246 (9th Cir. 2022), which rejected the legal-factual distinction, the district court claimed that it was distinguishable. According to the district court, the Ninth Circuit "held that a furnisher's reporting of a debt was 'patently incorrect' because a statute had abolished plaintiff's obligation to repay the debt," but "[h]ere, of course, no statute has made NMAC's reporting inaccurate." *See Ritz*, 2023 WL 3727892, at *7.

Appellants noticed this appeal on June 27, 2023.

## SUMMARY OF ARGUMENT

Section 1681s-2(b) of the Fair Credit Reporting Act requires entities that furnish information to consumer reporting agencies to reasonably investigate consumers' disputes regarding the completeness or accuracy of the information furnished. The statute does not distinguish between legal and factual disputes. The district court's conclusion to the contrary is not supported by the text of the statute.

Nor does the statute authorize furnishers to forgo investigating a "legal" dispute simply because there may be colorable arguments on both sides. That could be true even of purely factual disputes, and, in any event, a furnisher often cannot know whether there are colorable arguments on both sides until after it conducts some investigation (including, for example, assessing whether courts have yet resolved any legal question at issue).

Moreover, the argument that furnishers are not qualified to investigate "legal" disputes also lacks merit: furnishers make decisions about legal questions every day when addressing issues related to billing and collections. This case provides a prime example. The question of when the vehicle was "'return[ed]'" to the "'possession'" of the Nissan dealership within the meaning of the Ritzes' lease, *see Ritz*, 2023 WL 3727892, at *2-3

(quoting vehicle lease), involves—according to Nissan—a legal question at the heart of the disagreement between the parties. NMAC SJ Br., ECF No. 66-5, at 17 ("[T]he issue is whether the activities of that day were legally sufficient to cause the vehicle to be grounded and terminate Ritz's monthly payment obligation."). And although Nissan argued in the district court that it is not "qualified" to make such legal assessments, NMAC SJ Br. at 17, Nissan deemed itself "qualified" enough to make a legal assessment of the Ritzes' obligation and continue to bill them and then, later, to assure the Bureau that it had addressed the Ritzes' concerns. Nissan became no less qualified after the Ritzes filed their suit.

Importantly, any burden imposed on furnishers is mitigated by the fact that the investigation—including into a legal dispute—need only be reasonable, a standard that considers the case-specific context of the dispute.

The district court's ruling excepting "legal" disputes risks exposing consumers to more inaccurate credit reporting, conflicts with other circuit decisions, and undercuts the remedial purpose of the FCRA. Moreover, separating "factual" disputes from "legal" ones is difficult to accomplish in practice and would allow furnishers to evade their statutory obligations by characterizing nearly any dispute as a "legal" one. This Court should clarify

that the FCRA requires furnishers to conduct a reasonable investigation when it receives an indirect dispute, regardless of whether the dispute could be described as "legal."

## ARGUMENT

**The FCRA Requirement for Furnishers to Reasonably Investigate Disputes Applies to Disputes that Implicate Legal Issues, Not Just Disputes Raising Purely Factual Questions**

### A. The FCRA Applies Equally to Disputes that Could Be Characterized as Legal

Under the FCRA, a furnisher who receives notice of a dispute about the completeness or accuracy of information it provided to a CRA is required to "conduct an investigation with respect to the disputed information," 15 U.S.C. § 1681s-2(b)(1)(A), and this Court has determined that a furnisher's "investigation into a consumer's complaint must be 'reasonable,'" *Scarbo v. Wisdom Fin.*, No. 22-1398, 2022 WL 16829371, at *1 (3d Cir. Nov. 9, 2022).[6] By its terms, the statute requires investigation of *all* such disputes—it does not distinguish disputes that pose "factual" questions from those that implicate "legal" questions.

This is precisely what the Ninth Circuit held in *Gross*. In *Gross*, the furnisher argued that it need only investigate alleged factual inaccuracies.

---

[6] Requiring a reasonable investigation comports with the FCRA's goal to "protect consumers from the transmission of inaccurate information about them." *Gorman*, 584 F.3d at 1157.

Appellee's Answering Br., *Gross v. CitiMortgage, Inc.*, No. 20-17160, 2021 WL 2672784, at *24-33 (9th Cir. June 25, 2021). The Ninth Circuit rejected that argument, however, holding that the "FCRA does not categorically exempt legal issues from the investigations that furnishers must conduct," which "means that [the] FCRA will sometimes require furnishers to investigate . . . questions of legal significance." *Gross*, 33 F.4th at 1253.[7]

Nothing in the statutory text implies that the FCRA requires furnishers to investigate only disputes that can be described as "factual." Congress required furnishers to investigate any notice of a dispute about "the completeness or accuracy of information provided by a person to a [CRA]." 1681s-2(b)(1); *see also* 15 U.S.C. § 1681i(a)(1)(A), (a)(2). Nothing about these words suggests Congress intended to exclude from the

---

[7] The district court here held that "*Gross*'s facts are distinguishable from this case's," because unlike in *Gross*, in which the court determined that the reporting was "patently incorrect," "no statute has made NMAC's reporting inaccurate." *Ritz*, 2023 WL 3727892, at *7. That distinction is unpersuasive and overlooks that *Gross* straightforwardly rejected the sort of law-fact distinction adopted by the district court. *See Gross*, 33 F.4th at 1253. As the Ninth Circuit explained, "[t]he distinction between legal and factual issues is ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a legal one." *Id.* (cleaned up).

investigation requirement disputes about information that is incomplete or inaccurate on account of legal issues.[8]

To start, the word "accuracy" is not limited to factual accuracy. Rather, "accuracy"—defined as "freedom from mistake or error"[9]—is also naturally understood to refer to freedom from legal errors. The Supreme Court recently acknowledged as much when it explicitly recognized that "[i]naccurate information" is just as likely to "arise from a mistake of law as a mistake of fact" and that a "legal requirement" can "render[] [information] . . . inaccurate." *Unicolors, Inc. v. H&M Hennes & Mauritz, LP, 595 U.*S. 178, 185 (2022) (explaining that it would be "inaccurate" for a copyright registrant to treat multiple works as copyright-able under a single copyright application if those works did not satisfy the regulatory requirement that they be included in the "same unit of publication"). This Court likewise has recognized that the term "accurate" can refer to legal issues. *See also, e.g.*, *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 599 (3d Cir. 2015) (stating that "[n]one of these statements [by another

---

[8] Contrary arguments that some furnishers and amici have made in other cases are thus incorrect. *See, e.g.*, Appellees Answer Br., *Holden v. Holiday Inn Club Vacations, Inc.*, No. 22-11014 (11th Cir. Feb. 8, 2023).

[9] *Accuracy*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/accuracy (last visited Feb. 6, 2024).

court] are accurate characterizations of the law"). A statement that a consumer owes $500 when the consumer does not owe $500 is naturally understood to be not "accurate" regardless of whether the law or the facts (or some combination) is the reason that the statement is wrong.

The word "complete" in the statutory text likewise encompasses more than the factual "completeness" of furnished information. In ordinary usage, "complete" is defined as "having all necessary parts, elements, or steps."[10] That term naturally applies equally to disputes "about the completeness . . . of information" that allege that reported information is missing "necessary parts, elements, or steps" for a reason that can be described as legal (as opposed to factual).

So, too, the term "investigate" does not limit the duty to investigate to factual disputes. To "investigate" something is to "observe or study [it] by close examination and systematic inquiry."[11] Legal questions are just as capable as factual issues of being studied closely and systemically. And this Court has specifically used the verb "investigate" to refer to inquiries into

---

[10] *Complete*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/complete (last visited Feb. 6, 2024).

[11] *Investigate*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/investigate (last visited Feb. 6, 2024).

legal, as well as factual, topics. *See, e.g., Wolfington v. Reconstructive Orthopaedic Assocs. II PC,* 935 F.3d 187, 207 (3d Cir. 2019) ("The reasonableness of counsel's conduct depends on a number of factors, including, the amount of time available to conduct the factual and *legal investigation* . . . ." (cleaned up) (emphasis added)).

When a consumer disputes "the completeness or accuracy" of information furnished about a debt, the inquiry is typically whether the consumer owes the amount asserted. Depending on the dispute, that inquiry may involve factual questions, legal questions, or both. Under § 1681s-2(b)'s text, the furnisher must "conduct an investigation" about the disputed information to reach a judgment about whether the consumer owes the amount asserted, even if legal questions are presented.

### B. The Fact That Some Purportedly "Legal" Disputes Have Colorable Arguments on Both Sides Does Not Excuse Furnishers from Considering Them

The fact that "legal" disputes sometimes involve questions that have not previously been resolved by a court and that may have colorable arguments on both sides likewise provides no basis to excuse furnishers from investigating any dispute that could be described as "legal." For one thing, many factual disputes also have colorable arguments on both sides—such as when a furnisher claims that a consumer agreed to pay an amount

while the consumer claims that someone other than her agreed. So, any concern about requiring furnishers to investigate disputes where there are colorable arguments on both sides would not logically support distinguishing legal disputes from factual ones for purposes of § 1681s-2(b)'s investigation requirement. *See Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (holding that "there is no bright-line rule providing . . . that only purely factual . . . errors are actionable under the FCRA").

Nor is there any basis to read the FCRA as requiring furnishers to investigate only those disputes (whether described as "legal" or not) where there are not colorable arguments on both sides—or, as one court has put it, only disputes that can be "readily and objectively" resolved (such as disputes involving only "settled" legal questions or the "straightforward application of law to facts"), *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270-71 (2d Cir. 2023) (discussing CRAs' obligations). Furnishers typically could not know from the face of a dispute whether a dispute can be readily and objectively resolved. Even if a dispute raises a pure legal claim that the consumer does not owe the debt for a specified legal reason, the furnisher might not know upfront whether courts had resolved the legal question at issue; they would have to conduct *some* investigation to determine that. As a result, it would not make sense to say furnishers have

no obligation to investigate at all where the dispute cannot be readily and objectively resolved—because a furnisher often cannot know whether a dispute falls in that category until *after* the furnisher conducts some investigation. How much more the furnisher must do to investigate once it determines that an issue is unsettled and there are colorable arguments on both sides is a question about what is "reasonable" under the FCRA, not a question about whether the furnisher must investigate at all.

The district court held that furnishers have no obligation to investigate "legal" disputes, relying on *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010), and courts that have followed that decision. *See Ritz*, 2023 WL 3727892, at *5-6, *7. But *Chiang* does not explain how the FCRA's text or purpose supports its holding that furnishers need not investigate "legal" disputes. And *Chiang* relied, in turn, on prior cases holding that the FCRA does not require *CRA*s to investigate disputes that can be characterized as "legal." Even if it were proper to interpret § 1681i as excusing *CRA*s from investigating legal disputes—which it is not—it would not follow that *furnishers'* investigatory obligations under a different provision, 15 U.S.C. § 1681s-2(b)(1), are similarly limited. *See Gross*, 33 F.4th at 1253 (CRAs' obligations under § 1681i should not control the scope of furnishers' investigatory obligations under § 1681s-2(b)(1)). While some

courts have (incorrectly) concluded that CRAs lack institutional competency to investigate legal disputes, the same could not be said for furnishers: Furnishers generally have superior access to relevant information regarding disputed debts, and furnishers are necessarily considering whether consumers owe the debt when they make decisions about billing and collections. *See Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) ("[I]t makes sense that furnishers shoulder this burden: they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt."). Thus, furnishers' investigatory obligations "will often be more extensive." *Gross*, 33 F.4th at 1253.

This case demonstrates that furnishers are fully competent to investigate legal disputes, even where there may be colorable arguments on both sides. In choosing to continue billing the Ritzes for the car (and to report that debt to the credit bureaus), Nissan apparently made the legal determination that the car had not been "returned" when the Ritzes brought the car to the dealership and left it there. *See* NMAC SJ Br., ECF No. 66-5, at 17 ("[T]he issue is whether the activities of that day were legally sufficient to cause the vehicle to be grounded and terminate Ritz's monthly payment obligation."). And when it finally considered the Ritzes' dispute,

Nissan eventually concluded that was wrong: It determined that the dealership employees—not the Ritzes—were at fault for the dealer being late to "ground" the vehicle, and that the Ritzes had returned it on time within the meaning of the lease. *See Ritz*, 2023 WL 3727892, at *3. Accordingly, Nissan instructed the CRAs to remove the debt from the credit reports. Importantly, Nissan did not hesitate to tell the Bureau of its legal conclusion—i.e., that the dealers' employees were at fault (and that it had instructed the CRAs to remove the debt from the credit reports)—in response to a notice that the Bureau had received a complaint about the transaction. Nissan's contention that it now lacks the ability to make those same legal judgments is unpersuasive: Creditors make legal judgments every day when making decisions about what they can bill consumers for and what debts they can collect—just as Nissan did in this matter.[12] Exempting furnishers from having to investigate legal disputes thus would create a one-sided dynamic where furnishers would be free to reach legal conclusions against consumers, but would have no duty to investigate when

---

[12] Indeed, the Bureau's regulations governing direct disputes confirm that furnishers are capable of, and are expected to, investigate legal issues of liability. Those regulations specifically require furnishers to conduct a reasonable investigation of direct disputes that relate to "[t]he consumer's liability for a credit account or other debt with the furnisher," a question that will often implicate legal issues. 12 C.F.R. § 1022.43(a), (a)(1).

furnishers view consumers' disputes as involving legal issues. That would be inconsistent with the FCRA's purposes.

In addition, the concern that furnishers are not "qualified" to address "legal" disputes misunderstands the nature of furnishers' obligation to investigate such disputes. Where a dispute raises an unsettled "legal" question, that may affect what the furnisher needs to do to fulfill its obligation to reasonably investigate the dispute—but it does not allow the furnisher to avoid any investigation whatsoever. *See Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (explaining that a reasonable investigation "is one that a reasonably prudent person would undertake under the circumstances").

In particular, upon receiving notice of a dispute, a furnisher's obligation is to consider the dispute, *reasonably* investigate it, and determine whether, in light of the issue raised, the furnisher has a sufficient basis to verify the information. This obligation to conduct a reasonable investigation exists whether the dispute raises issues that are "factual" or "legal" in nature. Just as a furnisher confronted with a "factual" dispute might need to review account-level documentation or other records to determine whether it has "sufficient evidence to support the conclusion that the [disputed] information was true," *Hinkle v. Midland Credit Mgmt.,*

*Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016), a furnisher confronted with a dispute raising a "legal" question might need to review the terms of the contract, a statute, or other relevant authorities to determine whether it has a sufficient legal basis to support the conclusion that the debt is owed in the amount asserted. Thus, a merely "superficial" inquiry will not suffice, *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004), and courts reject furnishers' assertions that they satisfy their obligation to investigate simply by going through the motions of conducting an investigation. *See, e.g., Alston v. Wells Fargo Bank, N.A.*, No. 8:12-cv-03671-AW, 2013 WL 990416, at *5 (D. Md. Mar. 12, 2013). To be clear, though, what counts as a sufficient legal basis to verify a debt is context dependent and will turn on the nature of the dispute, the state of the law, and other case-specific factors. *See Hinkle*, 827 F,3d at 1303. It is not a one-size-fits-all assessment. But—and this is the most important point—the furnisher cannot disregard its obligation to reasonably investigate the dispute simply because it raises a contested legal issue.

If, after that investigation, the furnisher has a sufficient basis to reasonably conclude that the debt is owed in the amount asserted, it can report that the debt has been verified and continue to furnish information about the debt to CRAs. *See id.* at 1301. If, by contrast, the furnisher's

reasonable investigation of the dispute causes the furnisher to realize that the consumer does not actually owe the debt, or that the furnisher does not have a sufficient basis to verify the debt, the furnisher must delete the debt from the information it furnishes to the CRAs. 15 U.S.C. § 1681s-2(b)(1)(E) (providing that if information is found to be "inaccurate or complete" or "cannot be verified" the furnisher must modify, delete, or permanently block the information, as appropriate).

The upshot is that furnishers must consider consumers' disputes, even if they implicate "legal" questions or other unsettled questions that have colorable arguments on both sides. A court may be the ultimate arbiter of whether the debt is owed (in a debt-collection action or a declaratory judgment action by the consumer, for example). But this is true whether a dispute raises legal or factual questions. Thus, a furnisher maintains an obligation to consider disputes that raise legal questions, conduct a reasonable investigation, and determine whether, in light of the issues raised in the dispute, it has a sufficient basis to verify the debt.

There is no reason to carve out of furnishers' investigation requirement disputes that can be classified as "legal" or any other disputes involving unsettled questions that may have colorable arguments on both sides.

24

### C. An Atextual Exception for "Legal" Disputes Could Swallow the Reasonable Investigation Rule

The Court should decline to excuse furnishers from investigating purportedly "legal" disputes for another reason: the exception could swallow the rule. Determining whether a dispute is legal or factual is no easy feat. The line is a fuzzy one, and many inaccurate representations pertaining to an individual's debt obligations arguably could be characterized as legal inaccuracies, particularly given that determining the truth or falsity of the representation could require review of a contract. Recognizing an atextual exception for "legal" disputes, then, could gut the reasonable investigation requirement. The Court should decline the invitation to eviscerate this statutory obligation.

Carving out legal disputes is ripe for abuse and would likely prove unworkable in practice. "[C]lassifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009) (recognizing that a dispute about fraudulently opening a credit card could be characterized as a factual dispute about whether the plaintiff signed the card or a legal dispute over liability for the disputed debt).

This Court's cases have recognized (and demonstrated) the difficulty of distinguishing between questions of law and questions of fact in the

context of contracts. If a contract is ambiguous, the court must "interpret[ ]" the contract, and interpretation presents questions of fact about the parties' intent. *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 528 (3d Cir. 2018). But if the contract is unambiguous, then the court must engage in "construction" of the contract, which requires resolving legal questions about the effect of the provisions. *Id*. at 528, 528 n.13. "The distinction between interpretation and construction is not always easy" to apply, however. *John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986). Similarly, faced with disputes about the accuracy of credit reporting connected to identical contractual provisions, one court might frame the dispute as a factual one about the intent of the parties with regard to ambiguous language, whereas another might consider the language unambiguous, rendering the issue a question of law as to which (under Nissan's approach) no investigation would be required. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 593 (3d Cir. 2009) (Nygaard, J., dissenting) (disagreeing about whether contract terms are ambiguous). A furnisher's investigation obligation should not turn on the resolution of an unnecessary—and often difficult—question of labels.

Consider another example. The Seventh Circuit recently considered a set of consolidated cases in which the plaintiffs claimed they did not owe certain debts to the creditors listed on their credit reports because the debts had purportedly been assigned to other companies. The Seventh Circuit noted that "[i]n each of these disputes . . . the facts present a similar pattern." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 565 (7th Cir. 2021). Nonetheless, the district courts offered different views of whether those materially identical disputes were "legal" or "factual": Some courts determined that whether the creditors owed the debts was a question of law; one decided that same question was a mixed question of law and fact; and still other courts "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Id*.

Creating an investigation exception based on the often-fuzzy line between legal and factual disputes would undermine the FCRA's important protections. This risk is highlighted by a district court decision—recently overturned by the Second Circuit—concluding that a dispute was "legal," and therefore not cognizable under the FCRA, simply because it involved the terms of a contract. *Sessa v. Linear Motors, LLC*, 576 F. Supp. 3d 1, 5 (S.D.N.Y. 2021), *reversed on appeal*, 74 F.4th 38. *Id.* The CRA erroneously

reported that a consumer owed a large "balloon payment" at the end of her car lease, when in fact her car lease contained no such payment obligation whatsoever. Instead, the figure listed as a "balloon payment" on her credit report was simply a notation of the residual value of the car at the end of the lease, as the furnisher itself acknowledged. *Id.* Despite the reporting being clear error, the district court rejected the consumer's FCRA claim because it viewed that "contractual" issue as a "legal" dispute. *Id.* at 13-14. The district court's analysis shows how easily an exclusion for "legal" inaccuracies could create a loophole that would gut the requirement to investigate disputes. Sensibly, then, the Second Circuit reversed, explicitly rejecting a rigid distinction and holding that the FCRA does not contemplate a "threshold inquiry into whether an alleged inaccuracy was 'legal' and therefore non-cognizable under the FCRA." *Sessa,* 74 F.4th at 40.

As a result of the difficulty in cleanly distinguishing legal and factual issues, even in the context of CRAs' obligations under the FCRA, some courts have correctly rejected a formal legal-factual distinction (some even before the recent *Gross* and *Sessa* decisions). For example, "the Ninth Circuit has endorsed holding a CRA liable under [the FCRA] when it 'overlooks or misinterprets' . . . publicly available documents of *legal*

*significance.*" *Nelson v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-00419-HZ, 2014 WL 2866841, at *5 (D. Or. June 23, 2014) (emphasis added) (relying on *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-70 (9th Cir. 2008)). Similarly, the Second Circuit, while holding that "[t]he unresolved legal question . . . render[ed] [a] claim non-cognizable under the FCRA," explained that "this holding does not mean that credit reporting agencies are never required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader*, 56 F.4th at 270. And even courts that maintain a more rigid factual-legal distinction have found that if a legal issue already has been adjudicated by another court or otherwise resolved, a dispute raising that issue should be considered factual, rather than legal. *See, e.g., Losch v. Nationstar Mortg.*, LLC, 995 F.3d 937, 946-47 (11th Cir. 2021); *Hopkins v. I.C. Sys.*, No. 18-cv-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 5, 2020).

Of course, even under the framework proposed by Nissan, just because a furnisher might classify a dispute as "legal" does not necessarily mean a court would agree with that classification. But furnishers with sufficient resources could afford to raise this as a defense to every claim involving an insufficient investigation. This approach would disadvantage consumers and tie up courts with litigation about formalistic labels, even in

cases that should otherwise be easily resolved on summary judgment for the consumers (because the furnisher conducted no investigation, or such a minimal investigation that no court could consider it reasonable).

Given the difficulty in distinguishing "legal" from "factual" disputes, this Court should clarify there is no exemption in the FCRA's reasonable investigation requirement for disputes that raise legal questions. Such an exemption would undermine the purpose of the reasonable-investigation requirement to ensure accuracy in credit reports. It would also result in an unworkable standard where mixed questions of fact and law are presented, and it would encourage furnishers to ignore their statutory obligations to conduct a reasonable investigation when a dispute could be characterized as "legal."

## CONCLUSION

For the foregoing reasons, this Court should hold that, under the FCRA, furnishers must reasonably investigate indirect disputes, regardless of whether the dispute can be characterized as legal.

DATED: February 07, 2024          Respectfully submitted,

Anisha Dasgupta                          Seth Frotman
  *General Counsel*                        *General Counsel*
Mariel Goetz                             Steven Y. Bressler
  *Acting Deputy General Counsel*          *Deputy General Counsel*

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2763 (telephone)
iabyad@ftc.gov

Kristin Bateman
   *Assistant General Counsel*

s/ *Justin M. Sandberg*_____
Justin M. Sandberg
   *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786 (telephone)
Justin.Sandberg@cfpb.gov

## COMBINED CERTIFICATIONS

1.      Government counsel are not required to be members of the bar of this Court.

2.      This brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Georgia, a proportionally spaced font.

3.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6435 words, excluding exempt material, according to the count of Microsoft Word.

4.      On February 7, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. The participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

5.      The text of the electronic version of this document is identical to the text of the paper copies that will be provided.

6.      This document was scanned for viruses using VMRay Sandbox and no virus was detected.

/s/ *Justin M. Sandberg*
Justin M. Sandberg
*Counsel for Amicus Curiae*
*Consumer Financial Protection Bureau*