NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2181
_____

MICHAEL RITZ; ANDREW RITZ,
                                                              Appellants

v.

EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANSUNION, LLC; NISSAN-INFINITI LT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:20-cv-13509)
District Judge: Honorable Georgette Castner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 1, 2024

Before: SHWARTZ, MATEY, and SCIRICA, *Circuit Judges.*

(Filed:   May 6, 2025)

_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, establishes procedures to ensure accurate and complete credit reporting both by consumer reporting agencies ("CRAs") and furnishers, who provide CRAs information about consumers' debts.  Andrew and Michael Ritz ("Plaintiffs") appeal the District Court's order granting summary judgment to Nissan Motor Acceptance Corporation ("Nissan" or "Defendant") on an FCRA claim regarding Nissan's investigation of a disputed balance due on a lease agreement with Plaintiffs.  Because this case presents a genuine dispute of material fact, we will reverse the District Court's grant of summary judgment and remand for further proceedings.

I.[1]

Plaintiffs leased a vehicle from a New Jersey dealership which was thereafter assigned to Nissan and extended on the same terms as their original lease agreement. Prior to the termination of their extended lease, Plaintiffs were emailed information to schedule an appointment for the return and inspection of their vehicle.  Plaintiffs did not make such an appointment but did bring their vehicle to a Nissan dealership on the due date of their lease—on August 9, 2019.

Because Plaintiffs lacked an appointment, the dealership refused to accept the vehicle, inspect the vehicle, or provide plaintiffs with a mileage statement they were

---

[1] Because this is an appeal from an order resolving a motion for summary judgment, we view all disputed facts in the light most favorable to the non-movant Plaintiffs. *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

required to sign under the lease terms.  Plaintiffs entered into an argument with the dealership—asserting the lease agreement failed to mention an appointment requirement, only requiring Plaintiffs to "return the [v]ehicle to a Nissan dealer or other location we specify" and sign a mileage statement.  JA 259.  Following the exchange, Plaintiffs left the car at the dealership over the dealership's objection and contacted Nissan to report their mileage.

Nissan continued to charge Plaintiffs additional monthly payments—the penalty for failure to return under the lease agreement—because the dealership did not "ground" the vehicle, *i.e.*, report the vehicle as returned in the manner required by the lease agreement.  Contesting the determination that the car was not returned, Plaintiffs refused to pay and disputed the charges with Nissan, while Nissan reported a delinquency to CRAs for failure to pay the additional charges.

Nissan's complaints department reviewed Plaintiffs' complaints and sought an explanation from the dealership.  On September 24, 2019, the dealership sent a letter to Nissan explaining the "vehicle was dropped off to our dealership" but Plaintiffs "didn't want to follow procedure and abandoned the Vehicle."  JA 185.  On September 26, 2019, after reviewing Plaintiffs' disputes and the dealership's letter, the complaints department listed Plaintiffs' account balance as zero and submitted a request to Nissan's credit department for the delinquency to be removed from Plaintiffs' credit report because the "[v]ehicle was returned on 8/9/2019 but dealer grounded late."  JA 361.  But the credit team ignored this request, noting the Vehicle Identification Number ("VIN") on the letter from the dealership to the complaints department contained a typo.  Nissan generally

3

does not rely on communications with an incorrect VIN to ensure the reporting reflects the vehicle at issue rather than another vehicle.[2]  Accordingly, Nissan did not remove the reported delinquency in its reports to CRAs.

Between September 28th and November 4th, Plaintiffs disputed Nissan's reported delinquency with CRAs, and the disputes were forwarded from the agencies to Nissan. In response to these disputes, Nissan continued to report an existing late balance on Plaintiffs' account to the agencies.  Following various additional complaints to Nissan and a complaint to the Consumer Financial Protection Bureau, in addition to the disputes filed directly with the CRAs, Nissan removed the delinquency from Plaintiffs' account on January 6, 2019.

Plaintiffs then brought this action in federal district court, arguing Nissan violated FCRA, 15 U.S.C. § 1681s-2, by reporting a past due balance to CRAs after receiving notice of Plaintiffs' disputes with those CRAs.  Nissan argued the reporting was accurate because the vehicle was not properly returned since the car was not inspected and accepted by the dealership with a signed odometer statement in accordance with the lease agreement.   Nissan also argued the favorable determination by its complaints department does not bear on the accuracy or inaccuracy of its credit reporting.

Following discovery, Nissan filed a motion for summary judgment.  The District Court agreed with Nissan that customer service's ultimate resolution of the dispute in Plaintiffs' favor did not, in and of itself, render its prior credit reporting inaccurate.

---

[2] That being said, a Nissan employee admitted that it was very clear that the dealership's letter pertained to the Plaintiffs' vehicle.

Accordingly, the District Court determined that Plaintiffs' dispute largely boiled down to "a contract dispute, not a factual inaccuracy" and held as a matter of law that such a dispute is not actionable under FCRA. *Ritz v. Nissan-Infiniti LT*, No. 20-13509, 2023 WL 3727892, at \*7 (D.N.J. May 30, 2023). Plaintiffs timely appealed to this court.

II.[3]

"On appeal from a grant of summary judgment, the Court of Appeals' review is plenary and the court should apply the same test the district court should have utilized initially." *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (internal quotation marks and citation omitted). Summary judgment is granted only when the record shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In this analysis, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment must be denied if "enough evidence . . . exist[s] to enable a jury to reasonably find for the nonmovant on the issue." *Id.* (citation omitted).

III.

The FCRA is a statute "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v.*

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

*Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (internal quotation marks and citation omitted). The statute requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of" reported information. 15 U.S.C. § 1681e(b). Accordingly, "if the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer," the agency is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information." *Id.* § 1681i(a)(1)(A). Upon notice of the dispute, the agency is also required to provide "[p]rompt notice of [the] dispute to [the] furnisher" who "provided any item of information in dispute." *Id.* § 1681i(a)(2).

As part of this statutory scheme, "FCRA [also] places certain duties on those who furnish information to consumer reporting agencies." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). Upon receiving notice of a consumer's dispute with a CRA under § 1681i(a)(2), the furnisher shall "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A), (C). If the investigation determines the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher shall, as appropriate, "modify," "delete," or "permanently block the reporting of that item of information." *Id.* § 1681s-2(b)(1)(E).

FCRA provides a private cause of action and civil liability for negligent or willful

violations of § 1681s-2(b).  *Id.* §§ 1681n, 1681o, 1681s-2(c).[4]  "[F]ederal circuit courts

that have interpreted § 1681s[-]2(b) agree on two threshold requirements for a claim

under the statute:" (1) "[t]he plaintiff must make a prima facie showing that the . . .

furnisher provided incomplete or inaccurate information," and (2) "[t]he plaintiff must . .

. show that the incompleteness or inaccuracy was the product of an unreasonable

investigation."  *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023)

(citations omitted).[5]

A.

Under the first requirement, if there is no threshold showing of inaccuracy, then

the inquiry stops there and "the reasonableness of the investigation is not in play."  *Gross*

*v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022); *cf. Bibbs v. Trans Union LLC*,

43 F.4th 331, 344 (3d Cir. 2022) ("[B]efore a court can consider whether an agency's

reinvestigation was reasonable, it must first determine that the disputed information was

---

[4] "Although furnishers . . . are obligated to provide complete and accurate information to CRAs even in the first instance, *i.e.*, before a dispute, under 15 U.S.C. § 1681s-2(a), FCRA explicitly precludes private suits for failure to comply with that statutory duty, 15 U.S.C. § 1681s-2(c), and instead provides for enforcement of that provision by federal and state officials, 15 U.S.C. § 1681s-2(d)."  *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014).

[5] We adopted this two-part approach for CRAs in *Bibbs v. Trans Union LLC*, 43 F.4th 331, 344–45 (3d Cir. 2022).  We agree with our sister circuits that the same approach applies to furnishers as well.  *See Seamans*, 744 F.3d at 865 (agreeing with our sister circuits that the tests for an investigation under § 1681s-2(b) and § 1681i are largely the same); *see also Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) (same); *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) ("[O]ne of the most basic rules of statutory interpretation is that identical words used in different parts of the same act are intended to have the same meaning." (internal quotation marks and citations omitted)).

in fact inaccurate."). The District Court ruled Plaintiffs did not make a threshold showing

of inaccuracy because their dispute was about the legal validity of the debt under the

lease agreement.

Courts disagree over whether a consumer can "make a prima facie showing of

inaccuracy" by raising a legal dispute as to the validity of a reported debt with a furnisher

and/or credit reporting agency. *Gross*, 33 F.4th at 1251 (internal quotation marks and

citation omitted).[6] And our Circuit has not addressed whether a legal dispute constitutes

a "dispute with regard to the completeness or accuracy of any information" that must be

investigated. 15 U.S.C. § 1681s-2(b)(1). Nor have we addressed whether a furnisher

must resolve such disputes as part of their obligation to correct "incomplete" or

"inaccurate" information following a dispute. *Id.* Even though the District Court reached

---

[6] Some courts require a showing of "factual inaccuracy, rather than the existence of disputed legal questions" under § 1681s-2(b), reasoning "furnishers are neither qualified nor obligated to resolve" disputes of a legal nature. *Chiang*, 595 F.3d at 38 (internal quotation marks and citation omitted). Some amici contend this rule prevents frivolous collateral attacks by disgruntled creditors of valid debts, which might discourage accurate reporting. *See* Chamber of Commerce Amicus Br. at 29–30. Other courts reason "[t]he distinction between 'legal' and 'factual' issues" in this context "is ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a 'legal' one." *Gross*, 33 F.4th at 1253 (internal quotation marks omitted). This concern over abuse by furnishers is shared by the Government. CFPB Amicus Br. 25–30. Some courts further reason that a legal dispute "alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023). Under this approach, furnishers need not correct legal disputes only resolvable by a court of law but should "investigate" and "highlight or resolve . . . questions of legal significance" that the furnisher is in a position to objectively and readily verify, such as "whether debts are actually due and/or are collectible." *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024) (internal quotation marks and citation omitted).

this issue in coming to its disposition, we do not and need not address this question here.

Although it is unresolved whether reported information that is subject to a legal dispute can be "inaccurate" or "incomplete" under the statute, it is well established "that factually incorrect information is 'inaccurate' for purposes of FCRA." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (citation omitted). And even "technically correct" information is inaccurate if "it create[s] a materially misleading impression" such "that [it] can be expected to have an adverse effect." *Id.* (alterations in original) (internal quotation marks and citations omitted).[7]

B.

Here, the automated credit dispute verifications forwarded from CRAs to Nissan noted that Plaintiffs disputed the delinquency on their account. And, by that point, customer service had determined the account balance should be zero and requested the credit team remove the delinquency on the account. The District Court observed that "whether customer service chooses to resolve issues favorably to a consumer does not

---

[7] The ordinary meaning of "inaccurate" is "not accurate." *Inaccurate*, Merriam Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/inaccurate (last visited Jan. 29, 2025). And "accurate" means "free from error especially as the result of care." *Accurate*, Merriam Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/accurate (last visited January 29, 2025). And the ordinary meaning of incomplete is "not complete," namely "lacking a usually necessary part, element, or step." *Incomplete*, Merriam Webster's Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/incomplete (last visited Jan. 29, 2025). These definitions have not changed substantially since the enactment of FCRA in 1970 and its subsequent amendments, including the addition of § 1681s-2's investigation requirement in 1996. *See Holden*, 98 F.4th at 1367 (discussing the dictionary definitions in 1960s); *Accurate*, *Merriam Webster's Collegiate Dictionary* (10th ed. 1993) (adopting a similar definition of accurate).

address whether the information was accurate." *Ritz*, 2023 WL 3727892, at \*7 (internal

quotation marks and citation omitted). But a jury could find it inaccurate or misleading

for Nissan to report that Plaintiffs owed and failed to pay the additional monthly charges

when (1) Nissan's complaints department had repeatedly found that Plaintiffs had no

outstanding obligation to Nissan, and (2) the record indicates that the reason the

delinquency was not removed was because the dealership had made a typographical error

in its letter to Nissan and the credit reporting department repeatedly declined to correct

the delinquency on this basis. Accordingly, the District Court erred by granting Nissan

summary judgment.

Under the second requirement, a plaintiff must show incompleteness or inaccuracy

in a furnisher's report "was the product of an unreasonable investigation." *Frazier*, 72

F.4th at 775. An investigation is "reasonable" if it is one "a reasonably prudent person

would undertake under the circumstances," and in this inquiry, we "balance the potential

harm from inaccuracy against the burden of safeguarding against such inaccuracy."

*Seamans*, 744 F.3d at 864–65 (internal quotation marks and citation omitted).

Plaintiffs argue Nissan's investigation was unreasonable because it reported an

existing past due balance—following the complaints department's request to remove the

delinquency—due not to a *bona fide* belief that Plaintiffs owed money under the lease but

because of an incorrect digit in the VIN number provided by the dealer. The

reasonableness of an investigation "is normally a question for trial unless the

reasonableness or unreasonableness of the procedures is beyond question." *Id.*

Here, a jury could have determined from the record that the continued reporting of

a past due balance may not have been due to a *bona fide* belief that Plaintiffs were liable, but rather because different departments failed to communicate with one another about Plaintiffs' case, in part due to a typographical error by the dealer.  And a jury could have concluded that Nissan's investigation was unreasonable based on the credit reporting team's refusal to consider (1) evidence suggesting its credit reporting might be inaccurate—namely, the dealership letter and complaints department's repeated service requests—and (2) attempts to determine whether the dealership letter pertained to the Plaintiffs' account, despite the typographical error.

Accordingly, the District Court erred in granting summary judgment because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 147 n.6 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 248).

### IV.

For the foregoing reasons, we will reverse the District Court's order of May 30, 2023, and remand for further proceedings consistent with this Opinion.